**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LINDA F. WODZ,**

           **Plaintiff,**

**-vs-**                                      **Case No. 6:05-cv-655-Orl-DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

           **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

## *I. BACKGROUND*

### A.     Procedural History

Plaintiff filed for disability insurance benefits on May 9, 2002. R. 60-62. She alleged an onset of disability on November 14, 2001[1], due to lupus, lung disease, irritable bowel syndrome (IBS), fatigue, depression and anxiety. R 68, 505, 508. Her application was denied initially and upon reconsideration. R. 32-33, 34, 37-38. Plaintiff requested a hearing, which was held on July 21, 2004, before Administrative Law Judge Apolo Garcia (hereinafter referred to as "ALJ"). R. 502-539. In a decision dated September 22, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-20. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 9. The Appeals Council denied Plaintiff's request on March 4, 2005. R. 5-8. Plaintiff filed this action for judicial review on May 2, 2005.  Doc. No. 1.

### A.     Medical History and Findings Summary

Plaintiff was fifty-six years old at the time of the hearing. R. 60. She had completed tenth grade, and then obtained her GED. R. 74, 505. Plaintiff had been employed as a server in a restaurant during her entire working life. R 69, 85, 506. She made no attempt to return to work since 1995. R. 268. Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of lupus, lung disease, irritable bowel syndrome (IBS), fatigue, depression and anxiety. R 68, 505, 508. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from systemic lupus erythematosis, stable; chronic obstructive pulmonary disease, and degenerative disc disease of the cervical spine, which were "severe"

---

[1]Plaintiff originally alleged disability beginning on April 10, 1998. R. 68. At the hearing, Plaintiff amended her alleged onset date to November 14, 2001, which is the date used by the ALJ. R. 14, 508.

medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19-20, Finding 3, 4. The ALJ determined that Plaintiff had the residual functional capacity (RFC) to stand, walk and sit six hours in an eight-hour workday, and lift 20 pounds; had occasional postural limitations in climbing, balancing, stooping, kneeling, crouching and crawling; and needed to avoid exposure to fumes, odors and gases. R. 20, Finding No. 6. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible for the reasons set forth in the body of the decision.[2] R. 18. Assisted by the testimony of the VE, the ALJ concluded that Plaintiff's past relevant work as a server did not require the performance of work-related activities precluded by her RFC. R. 20, Finding 7. Accordingly, the ALJ determined that Plaintiff could perform past relevant work and was not under a disability, as defined in the Act, at any time through the date of the decision. R. 20, Finding 9.

Plaintiff now asserts that the ALJ erred by finding she had the RFC to perform her past relevant work contrary to treating physician's statements. Plaintiff also contends that the ALJ erred by improperly applying the pain standard and in evaluating her credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

---

[2] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, objective medical evidence and Plaintiff's stated daily activities. R. 18.

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *III. ANALYSIS*

#### A.   RFC and the treating physician's opinions.

Plaintiff claims that the ALJ should not have found her able to perform her past relevant work in light of limitations assigned by Dr. Webster who had treated Plaintiff for many years and opined that her limitations precluded her from performing any work. The Commissioner argues that the ALJ was correct in finding that the limitations in Dr. Webster's assessment were not supported by his relevant treatment notes.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings

and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ determined that Plaintiff had the RFC to stand, walk, and sit six hours in an eight-hour workday and lift 20 pounds; had occasional postural limitations in climbing, balancing, stooping, kneeling, crouching and crawling; and needed to avoid exposure to fumes, and therefore, could perform her past relevant work as a server. R. 20, Finding No. 6, 7. Plaintiff contends that the ALJ erred in finding Plaintiff had the capacity to do light work when Plaintiff's treating physician, Dr. Webster, opined that Plaintiff had a much more restrictive residual functional capacity. The Commissioner contends that Plaintiff failed to meet her burden to prove that she is unable to perform her past relevant work.

To support her argument, Plaintiff relies on a physical residual functional capacity questionnaire completed by Dr. Webster on February 10, 2004, opining that Plaintiff had the RFC for less than a full range of sedentary work. R. 391-95. In that form, Dr. Webster indicated that he had seen Plaintiff on a monthly basis for her medical problems, mixed connective tissue disease, lupus, irritable bowel syndrome, cervical pain, insomnia, and that her prognosis was poor. R. 391. Dr. Webster opined that Plaintiff would be able to sit, stand, or walk for less than two hours in an eight-hour work day, and would require a job that would permit her to shift positions at will from sitting, standing or walking and avoid sunlight because of the lupus medication, as well as avoid fumes, gases, and dust because of the chronic obstructive pulmonary disease. R. 393-95. Dr. Webster opined that the restrictions he outlined in the questionnaire were in place on or before February 10, 2004. R. 391. In a revised version of the questionnaire sent to SSA in July 2004 (but still dated February 10, 2004), Dr. Webster subsequently opined that the limitations he originally outlined were in place since

November 14, 2001, Plaintiff's alleged onset date, adding that Plaintiff had recently started on hypertension medications. R. 479. Dr. Webster explained that he inadvertently put February 10, 2004 as the date he completed the form, and he should have put November 14, 2001 as the date the limitations were in place. R. 480.

The Commissioner contends that neither Dr. Webster's nor Dr. Elston's records reflect any work-related limitations or objective findings which would be expected to cause the limitations listed by Dr. Webster. The Commissioner argues that the ALJ properly rejected Dr. Webster's assessment on the grounds that it was not supported by any evidence of physical examination or by the evidence in the file that would support such restrictive limitations.

Dr. Webster's records do not support an onset date of November 21, 2001 from lupus or IBS, which remained stable with medications and treatment. And although Plaintiff experienced increasing limitations in her left knee and foot, these are documented well after her date of last insured[3] (March 2003), as the ALJ very succinctly pointed out to Plaintiff's counsel at the hearing. R. 528-30.

Dr. Webster's records indicate he saw Plaintiff on November 14, 2001, complaining of left-sided back pain, and weakness associated with the left lower extremity. R. 231. Upon review of blood work, Dr. Webster concluded that Plaintiff had a strong positive antinuclear antibodies ("ANA") result, but noted that she did not have other strong symptoms of systemic lupus. R. 231. On November 21, 2001, Dr. Webster subsequently referred Plaintiff to a rheumatologist, Dr. Elston, for evaluation of Plaintiff's positive ANA result. R. 229. X-rays of Plaintiff's left lower lumbar area of

---

[3] Plaintiff was found to have a tear of the medial meniscus, a bone lesion and Baker cyst in her left knee in 2004. R. 396, 398, 402-03. A report dated September 2004 found that Plaintiff had advanced degenerative changes in the first MP joint. R. 501. In November 2001, although degenerative changes were detected in one MP joint, they were not diagnosed as "advanced." R. 238.

the back revealed minimal lumbar spondylolysis. R. 236. On January 3, 2002, Plaintiff was complained to Dr. Webster of sleeping problems, severe fatigue and shortness of breath on exertion. R. 228.

Plaintiff began seeing Dr. Elston, a rheumatologist, on January 22, 2002. R. 344. Blood tests on January 23, 2002 showed positive ANA again. R. 251. But a chest x-ray from January 2002 showed that Plaintiff had no active disease in the lungs; reports from February 2002 show a moderate pulmonary obstruction. R. 224, 234, 235. On March 1, 2002, Dr. Elston diagnosed Plaintiff with "probable lupus" versus connective tissue disorder. R. 337. On the whole, once Dr. Elston prescribed medication – Plaquenil – for treatment of Plaintiff's lupus or connective tissue disorder, his notes of office visits from January 2002 to September 2003 indicate her systemic lupus erythematosus ("SLE") was "stable" and Dr. Elston's assessment of her condition was consistently "fair" or "good" and he reported a normal rheumatological examination and muscle strength and tenderness to be within normal limits; Plaintiff reported no adverse side effects from the Plaquenil, no flare ups, and "good" activities of daily living. *See* R. 318, 320, 321, 323, 325, 326, 328, 330, 334, 336, 338, 340, 352, 353; *see also* R. 411 ("wonderful physical therapy result"). MRI results of the spine were negative and Dr. Elston believed Plaintiff's headache and neck pain were muscular or myofascial in nature, rather than related to her SLE. R. 324. She consistently had good grip strength, despite her previous carpal tunnel syndrome issues. R. 321, 324, 328. Dr. Webster noted in a February 2002 office visit that Plaintiff had "had arthralgias, which [had] greatly improved since starting on the Plaquenil." R. 226.

Systemic lupus erythematosus is defined as a condition of chronic inflammation caused by an autoimmune disease, which is an illness that occurs when the body's tissues and internal organs are

attacked by its own immune system.[4] Early on, Dr. Elston diagnosed Plaintiff with probable lupus and probable connective tissue disorder, apparently based in part on her high ANA result. R. 335, 337.

The classic connective tissue diseases include systemic lupus erythematosus, which has certain physical characteristics determinable through an examination, as well as through blood test and abnormal antibody patterns. *Id*. When the condition has not developed the classic features of a particular disease, doctors will often refer to the condition as undifferentiated connective tissue disease ("UCTD"). *Id*. "This designation implies that the characteristic features that are used to define the classic connective tissue diseases are not present, but that some symptoms or signs of a connective tissue disease exist. For example, a person may have a special antibody in the blood, such as antinuclear antibody and muscle pains, but no other definable features of a classic connective tissue disease. Individuals with undifferentiated connective tissue disease may never develop a fully definable condition or they may eventually develop a classic connective tissue disease." *Id.*

Dr. Elston's later records from December 2003 through 2004 refer to Plaintiff's impairment as mixed connective tissue disease, and subsequently undifferentiated connective tissue disease, with an elevated RNP antibody test result, first mentioned in the December 2003 notes. R. 407, 409, 414. Throughout Plaintiff's treatment, whether for SLE or UCTD, Dr. Elston continued to opine that Plaintiff's condition was "stable" on Plaquenil and his overall assessment of her condition was still consistently "fair." R. 401, 404, 405, 407 ("feels good").

Regarding Plaintiff's other medical complaints of low back pain, bronchitis, COPD, insomnia, and IBS, Dr. Webster's records document conservative treatment and/or improvement after medications were prescribed. Plaintiff's alleged onset date of November 14, 2001 is based on lower

---

[4] http://www.medicinenet.com/script/main/art.asp?articlekey= 16955.

back pain from lifting a wheelchair out of a car. R. 231. Dr. Webster prescribed a muscle relaxant. R. 231. A lumbar spine x-ray on November 15, 2001 showed minimal lumbar spondylolysis and no other significant abnormality. R. 236-37. One week later, by November 21, 2001, Plaintiff's low back pain was much improved with medication. R. 229. Dr. Webster recommended range of motion exercises and stretching for Plaintiff's lower back. R. 229.

On February 11, 2002, Plaintiff was seen for complaints of chest tightness especially in the upper gastric and lower sternal area. R. 226. A chest x-ray one week later showed Plaintiff's lungs were well expended without evidence of active disease or effusions. R. 244, 193 (March 2002). Other testing showed mild mitral regurgitation, but otherwise normal. R. 224.

Dr. Webster opined that the results of Plaintiff's pulmonary function testing showing moderate obstructive airway disease were likely the result of a history of nicotine abuse and not the lupus. R. 224. Plaintiff complained of breathing problems on March 7, 2002, and she was sent to the emergency room from the doctor's office; she was diagnosed as having bronchitis in April 2002. R. 221, 223. Further complaints of breathing problems and COPD were treated by Dr. Webster with medications. R. 197. Plaintiff was diagnosed as borderline normal for COPD with impairment of the small airways in February 2003. R. 203. In April 2003, Plaintiff was hospitalized for bronchitis, which resolved after four days in the hospital. R. 199. Dr. Webster prescribed Singulair for Plaintiff in March 2003, which improved her COPD. R. 202.

In May 2002, Plaintiff was diagnosed with irritable bowel syndrome (IBS) which Dr. Webster treated conservatively with diet changes and metamucil. R. 196, 219, 220. Following a colonoscopy in August 2002, Dr. Webster concluded that Plaintiff had distal esophagitis, gastritis, in addition to IBS. R. 158, 211, 214. Dr. Webster treated Plaintiff's gastritis with medication. R. 210. There is no

mention of further complaints in Dr. Webster's subsequent treatment records. R. 196-203.  For Plaintiff's complaints of insomnia, Dr. Webster prescribed Restoril, which seemed to alleviate most of her complaints. *See*, *e.g.*, R. 214.

Plaintiff also contends, without citation to the record, that the examining consultative physician's opinion that Plaintiff could "sit and stand for two to four hours a day with no bending or twisting" supports her inability to work; however, there is no such opinion in the record.  Doc. No. 11 at 2.  In the only physical consultative examination[5], Dr. Ranganathan opined on September 12, 2002 that Plaintiff could stand, sit, or walk about 6 hours per day.  R. 265.

As the Commissioner points out, Dr. Ranganathan's assessment of Plaintiff's functional abilities is consistent with the ALJ's RFC finding.  Dr. Ranganathan reported that Plaintiff was able to stand and/or walk about six hours per day, sit for six hours, lift and carry 20 pounds occasionally and 10 pounds frequently; there were no manipulative limitations, and Plaintiff had occasional postural and environmental workplace limitations.  R. 265.  Dr. Ranganathan gave diagnoses of positive ANA and connective tissue disorder by history; malar rash secondary to connective tissue disorder, "well controlled now"; history of COPD; and acid peptic disease.  R. 265.  On physical examination, Plaintiff had some wheezing, but there were no clinical signs of significant respiratory impairment R. 264. Plaintiff's motor strength and grip were 5/5 and equal bilaterally; gross/fine manipulation were well preserved; touch sensation was intact; and reflexes were two plus and equal bilaterally (R. 264). Plaintiff had mild paracervical tenderness, but Dr. Ranganathan observed that

---

[5]On September 22, 2002, Plaintiff underwent a mental health consultative examination by Dr. Clements, who did not opine as to Plaintiff's residual physical capacity. R. 267-70. The ALJ's mental health assessment is not challenged by the ALJ.

-11-

Plaintiff was able to get on and off the examination table; able to walk without any assistive device; and able to tandem walk and heel and toe walk. R. 264.

The ALJ explicitly discredited Dr. Webster's report on the grounds that it was unsupported by evidence of examination or evidence in the file. The ALJ's determination was supported by substantial evidence in the medical records. Neither Dr. Webster or Dr. Elston's records support the extreme limitations reported by Dr. Webster. State agency physicians reviewed the evidence and opined that Plaintiff was capable of light work. R. 272, 280. Thus, it is clear that the medical evidence did not support the extreme RFC opinion of Dr. Webster. Accordingly, good cause existed for the ALJ's failure to credit his opinion.

**B.     Pain and credibility.**

Plaintiff asserts that the ALJ erred in evaluating her pain due to lupus and cervical pain because substantial evidence showed Plaintiff suffered from pain caused by a severe and significant impairments. She also argues that the ALJ erred by finding her subjective complaints not fully credible and out of proportion to the medical evidence. She contends that the record demonstrates her credibility and that the ALJ failed to provide adequate and specific reasons for discrediting her complaints. The Commissioner contends that Plaintiff has not established pain or other symptoms of such severity as to preclude the performance of her past relevant work as a server.[6]

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the

---

[6] At the hearing, the VE testified that Plaintiff's past work as a server was light and semi-skilled. R. 535-36. In response to a hypothetical question that assumed that prior to her date of last insured (March 31, 2003), Plaintiff had the RFC for light work, could perform postural activities occasionally and had a nonsevere mental impairment, the vocational expert testified that Plaintiff could perform her past relevant work. R. 536-37.

-12-

objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 18. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated,

> The claimant's subjective complaints and symptoms, including her allegations of pain and limitations as well as depression have been given a great deal of thought and carefully compared to the other evidence. The claimant's testimony and other reports reflect that she lives a fully functional lifestyle, which is consistent with the medical evidence. The claimant was able to take care of her personal needs, cook, dust, do the laundry and drive. She goes out to eat and to the grocery store. She gets along well with people, manages her own funds. She visits with family and friends. There were no reported side effects from medication. In fact, her lupus medication has stabilized her condition. Activities and reports such as these are inconsistent with her allegations of incapacitating limitations or pain. This is not to minimize the medical impairment demonstrated in the record. The claimant does have impairments that limit her activities such as heavy lifting. However, the clinical findings resulting from these impairments do not appear to be of a degree capable of producing pain or limitations of incapacitating proportions. Accordingly, the undersigned finds that the claimant's allegations and subjective symptoms are out of proportion and inconsistent with the medical evidence and are not fully credible (Social Security Ruling 96-7p).

R. 18.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff argues the medical evidence supports the allegations of the severity of her pain from systemic lupus erythematosis and cervical pain, which were diagnosed prior to her date of last insured. R. 391. Plaintiff also vaguely contends that she also consistently complained or exhibited pain during examinations, citing virtually all of her medical records (roughly 200 pages) without specificity: R. 196-262, 318-381, 396-418, 419-461. Plaintiff contends her pain was from documented impairments based on MRIs, x-rays, and blood testing, which are objective medical evidence. R. 229, 231, 428. However, the cervical pain in November 2001 to which Plaintiff cites (R. 229, 231) was treated with

muscle relaxants, stretching, and range of motion exercises. R. 229. In addition, x-rays of her spine, revealed only minimal spondylosis. R. 236. Dr. Webster noted Plaintiff's lower back pain was much improved with medications. R. 229.

She also argues in support of the reasonableness of her complaints that, at no time in the record did Dr. Webster or Dr. Elston indicate that her pain complaints were unreasonable, inflated or not expected, but instead prescribed pain medication and pain management for her. This claim is substantiated by her many doctors' visits, use of pain medications and other pain modalities such as physical therapy, and diagnostic tests such as x-rays and MRIs. However, Dr. Webster actually opined that Plaintiff's tests were "so far normal" except for a high ANA. R. 229. Dr. Elston also had trouble diagnosing Plaintiff's exact condition over an eighteen-month period because of a lack of precise symptoms. The medication he did prescribe, Plaquenil, stabilized Plaintiff's condition. *See, e.g.,* R. 352, 353, 407, 411. Test results were on the whole normal, mild or negative with the exception of the high ANA and, later, high RNP. In December 2003, Dr. Elston's diagnosis of Plaintiff's condition changed to undifferentiated and/or mixed connective tissue disease. R. 407, 409, 414. Dr. Elston also noted in the records in March-April 2002, when he first started treating Plaintiff for her impairment, including anxiety, that she had a history of non-compliance. R. 341. She was unable to tell Dr. Elston what doctors she had seen and the results of any testing. R. 341.

As the Commissioner points out, the ALJ appropriately focused on the objective medical findings, the lack of any side effects from medication, the fact that Plaintiff's medication for lupus or UCTD stabilized her condition, and the fact that Plaintiff's activities were inconsistent with her pain complaints. R. 18. The record indicated that Plaintiff was able to cook, dust, do light

housework, wash dishes, do laundry, go grocery shopping with her husband, go out to eat, and drive. R. 94-95, 99, 102-03, 263.

Plaintiff's activities before her date of last insured were inconsistent with her complaints of totally disabling functional limitations, and further support the ALJ's finding that she has the RFC for light work, and can perform her past relevant work as a server. The ALJ properly evaluated Plaintiff's subjective complaints and offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ's reasons included inconsistencies between her reports and the examination findings, as well as inconsistencies between her statements and her activities of daily living. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's reasons are supported by substantial evidence.

### *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on September 15, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record